147 Wis.2d 486 (1988)
433 N.W.2d 592
IN RE D.F. and D.H., persons under the age of 18: D.F.R., Appellant,
v.
JUNEAU COUNTY, DEPARTMENT OF SOCIAL SERVICES, Respondent.
D.F.R., Appellant,
v.
JUNEAU COUNTY, DEPARTMENT OF SOCIAL SERVICES, Respondent.
Nos. 87-1440, 87-1441.
Court of Appeals of Wisconsin.
Submitted on briefs April 22, 1988.
Decided November 10, 1988.
*488 For the appellant the cause was submitted on the briefs of Virginia A. Pomeroy, assistant state public defender.
For the respondent the cause was submitted on the brief of James P. Gerlach and LaRowe, Gerlach, Chiquoine & Kahler, S.C., of Reedsburg.
On behalf of D.J. and D.H., there was a brief by Dennis C. Schuch, of Mauston, guardian ad litem.
Before Gartzke, P.J., Eich and Sundby, JJ.
SUNDBY, J.
D.F.R. appeals from an order under sec. 48.415(2), Stats., terminating her parental rights to her children, D.F. and D.H. She makes a number of claims, including the claim that the trial court erred in directing a verdict that her children had been placed outside her home for a cumulative *489 total period of one year or longer pursuant to dispositional orders containing the notice required by sec. 48.356(2).
We conclude that the trial court did err in directing a verdict on this question. We further conclude that the undisputed facts show that the trial court failed to include in the written dispositional and extension orders the notice to D.F.R. required by sec. 48.356(2), Stats. The department therefore failed to establish that grounds existed under sec. 48.415(2) for the involuntary termination of D.F.R.'s parental rights. The trial court erred in terminating D.F.R.'s parental rights. We therefore reverse the order with directions to the trial court to dismiss the petitions. We do not reach D.F.R.'s other claims.

I.

BACKGROUND
On May 17, 1983, the Juneau County Department of Social Services took temporary physical custody of D.F.R.'s son, D.F. On May 18, 1983, the trial court entered an order for non-secure temporary physical custody continuing temporary custody of D.F. in the department and placing him in a licensed foster home. On June 2, 1983, the trial court entered a further order continuing that custody and placement. On June 30, 1983, the court entered an order finding D.F. to be a child in need of protection or services (CHIPS). Legal custody of D.F. remained with the department but physical placement was with his mother.
On November 10, 1983, the department took temporary physical custody of D.F. and D.H. and placed them in a foster home. The notice of change in placement states that temporary physical custody of *490 the children was granted on November 14, 1983 by the juvenile court. The record does not, however, include a written order.
On March 6, 1984, the trial court entered dispositional orders adjudging D.F. and D.H. to be children in need of protection and services, giving custody to the department and placing the children in a foster home. Attached to the order affecting D.H. were sheets of paper on which were typed secs. 48.356 and 48.415, Stats., and the following:
I[,] We the Parent [,] Parents of [D.H.] have received a copy of the Statutes 48.356, Duty of Court to Warn.
I[,] We have gone over the Statutes 48.356, with the Intake Worker.
Immediately following these declarations were spaces for the signatures of the parents and the intake worker. The form was signed by the father of D.H. but not by D.F.R. or the intake worker. There was no such attachment to the order affecting D.F.
On November 19, 1984, the court entered a written order extending the dispositional orders of March 6, 1984 for an additional six months. The order did not contain the warnings required by sec. 48.365(2), Stats.
On May 31, 1985, the court entered a stipulated order extending the order of November 19, 1984 to July 28, 1985. The order did not contain the warnings required by sec. 48.356(2), Stats.
On June 12, 1985, the department filed petitions for the termination of D.R.F.'s parental rights to D.H. and D.F. The grounds were that D.H. and D.F. were in continuing need of protection or services, sec. 48.415(2), Stats.
*491 The petitions for termination were consolidated for purposes of trial and a fact-finding hearing was held June 16, 17 and 18, 1986. The petitions were tried to a jury. In each case the trial court answered affirmatively the special verdict question which asked whether each child had been placed outside D.F.R.'s home for a cumulative period of one year or longer pursuant to a court order containing the warning as to grounds upon which the parental rights of a parent may be terminated. In each case the jury found that grounds existed under sec. 48.415(2), Stats., for termination of D.F.R.'s rights.
On July 8, 1986, D.F.R. moved for judgment notwithstanding the verdict or for a new trial upon the grounds, among others, that she was not given the warnings required by sec. 48.356, Stats. She moved the court to change the answer in the special verdicts accordingly. By order entered December 30, 1986 the court denied her motion.
A dispositional order terminating the parental rights of D.F.R. to both children was entered January 9, 1987 and amended by order entered March 5, 1987. D.F.R. appealed from the dispositional order.[1]

II.

APPLICABLE STATUTES
Section 48.415, Stats., provides:
Grounds for termination of parental rights shall be one of the following:
. . . .

*492 (2) CONTINUING NEED OF PROTECTION OR SERVICES. Continuing need of protection or services may be established by a showing of all of the following:
(a) That the child has been adjudged to be in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.357, 48.363 or 48.365 containing the notice required by s. 48.356(2).
. . . .
(c) That the child has been outside the home for a cumulative total period of one year or longer pursuant to such orders, the parent has substantially neglected, willfully refused or been unable to remedy the conditions which resulted in the removal of the child from the home and there is a substantial likelihood that the parent will not remedy these conditions in the future.
Section 48.356, Stats., (1981-82), provides:
(1) Whenever the judge orders a child placed outside the home because the child has been adjudged to be in need of protection or services under s. 48.345, 48.357, 48.363 or 48.365, the judge shall orally inform the parent or parents who appear in court of any grounds for termination of parental rights under s. 48.415 which may be applicable.
(2) In addition to sub. (1), any written order which places a child outside the home under sub. (1) shall notify the parent or parents of the grounds for termination of parental rights under s. 48.415.
Section 48.356, Stats., was amended by sec. 8, 1983 Wis. Act 399, effective May 10, 1984 to require that the judge include in the oral and written warnings to the parent or parents "the conditions necessary *493 for the child to be returned to the home including any changes required in the parent's conduct, the nature of the home and the child's conduct."

III.

COMPLIANCE WITH SECTION 48.356(2), STATS.
During the jury instructions and verdict conference, the court stated: "[T]he Court [cannot] make a positive findings that there was compliance with [sec.] 48.356(2), [Stats.,] nevertheless I think that the intent of the statutes has been met." In view of the court's statement, we do not apply the clearly-erroneous standard, sec. 805.17(2), Stats., to the court's finding of fact that D.F.R. was notified of the possible grounds to terminate her parental rights as required by sec. 48.415(2)(a). Plainly, the court concluded from the undisputed facts that it had substantially complied with sec. 48.356(2) and that substantial compliance satisfied the statute.
[1, 2]
Whether substantial compliance with a statute is sufficient is a question of law. Midwest Mut. Ins. Co. v. Nicolazzi, 138 Wis. 2d 192, 196-202, 405 N.W.2d 732, 734-37 (Ct. App. 1987). If a statute is mandatory, its observance is usually said to be imperative. Id. at 198, 405 N.W.2d at 735. We conclude that substantial compliance with sec. 48.356(2), Stats., is insufficient. We consider that this conclusion is required by In re Termination of Parental Rights to M.A.M., 116 Wis. 2d 432, 342 N.W.2d 410 (1984).
In M.A.M., the court reversed an order involuntarily terminating parental rights because the trial court failed to follow sec. 48.23(2), Stats., in respect to representation of the parents by counsel, and failed to *494 inform the parents of their right to a jury trial as required by sec. 48.422(1) and (4).
Section 48.234(2)(a), Stats., provides that any parent eighteen years or older who appears before the court in a parental rights termination proceeding shall be represented by counsel, unless the right is waived. Section 48.422(1) and (4) requires the trial court at the hearing on a petition to terminate parental rights to inform the parties of their right to a jury trial.
In M.A.M., the court of appeals concluded that the trial court had not duty to advise the parents of their right to counsel because the trial court knew they had engaged counsel. 116 Wis. 2d at 435, 342 N.W.2d at 412. The court of appeals further concluded that the parents had waived their right to a jury trial. Id. The supreme court reversed, stating:
The statutory direction is unequivocal: A parent has the right to representation in court unless there is a waiver; and, in any case, the trial court has the duty to make a full explication of the statutory rightsthe right to representation, the right to a continuance, the right to request a jury trial, and the right to request a substitution of judge.
Id. at 441, 342 N.W.2d at 415.
The supreme court relied on the nature of involuntary termination of parental rights proceedings and legislative recognition of the importance of parental rights in establishing the substantive and procedural rights of parents in such proceedings. The court said:
We need not reiterate this court's numerous holdings that the power of the state to terminate the parental relationship is an awesome one, *495 which can only be exercised under proved facts and procedures which assure that the power is justly exercised. The parental right is accorded paramountcy in most circumstances and must be considered in that light until there has been an appropriate judicial proceeding demonstrating that the state's power may be exercised to terminate that right.
It is apparent that the Wisconsin legislature has recognized the importance of parental rights by setting up a panoply of substantive rights and procedures to assure that the parental rights will not be terminated precipitously, arbitrarily, or capriciously, but only after a deliberative, well considered, fact-finding process utilizing all the protections afforded by the statutes unless there is a specific, knowledgeable, and voluntary waiver.
M.A.M., 116 Wis. 2d at 436-37, 342 N.W.2d at 412-13 (footnote omitted). The court also said: "We conclude that the legislature intended to be expansive in its according of legal rights to parents even as it was expansive in providing that children and their rights be fully protected." Id. at 441, 342 N.W.2d at 414.
[3]
We conclude that the trial court's duty to warn and inform a parent under sec. 48.356(2), Stats., is included in that "Panoply of substantive rights and procedures to assure that . . . parental rights will not be terminated precipitously [or] arbitrarily. . . ." M.A.M., 116 Wis. 2d at 437, 342 N.W.2d at 412. The statute is mandatory, unequivocal and imperative. The importance of the notice required by sec. 48.356(2) is reflected in the fact that the legislature has required that the dispositional orders which establish the CHIPS grounds for termination include the notice.
*496 We therefore review the proceedings to determine whether the trial court complied with sec. 48.356(2), Stats. We conclude its was not.
[4]
Four orders were subject to sec. 48.356(2), Stats.: the March 6, 1984 dispositional orders under sec. 48.345 and the November 19, 1984 and May 31, 1985 orders under sec. 48.365 extending the dispositional orders. The dispositional orders were entered prior to the amendment of the statute effective May 10, 1984. It can be argued that under the unamended version of the statute, the attachment of sec. 48.415 to the March 6, 1984 order relating to D.H. satisfied the notice requirement of sec. 48.356(2). Subsection (1) of sec. 48.356 required that the trial judge orally inform a parent who appeared of any grounds for termination "which may be applicable." Subsection (2) only required that any applicable written order "notify the parent or parents of the grounds for termination of parental rights under s. 48.415." We conclude, however, that the intent of the statute was to warn the parent of any "applicable" grounds for involuntary termination and not merely to inform him or her of all possible grounds for termination, whether applicable or not. A specific warning was necessary to give the parent an opportunity to conform his or her conduct appropriately to avoid termination.
We do not decide that the warning procedure was deficient simply because the declarations referred to sec. 48.356, Stats., and not to sec. 48.415. Copies of both statutes were attached to the March 6, 1984 order affecting D.H.
The March 6, 1984 order as to D.F. did not have a copy of sec. 48.415, Stats., attached. No argument can be made that this order complied with sec. 48.356(2).
*497 [5]
The November 19, 1984 and May 31, 1985 extension orders did not contain any notice of the possible grounds for termination of D.F.R.'s parental rights or of the conditions necessary for D.F. or D.H. to be returned to D.F.R.'s home. Neither the county nor the guardian and litem argues that these orders satisfied the requirement of sec. 48.356(2), Stats. They both argue, however, that the trial court's oral warnings at the hearings of March 6, 1984 and October 2, 1984, satisfied the warning requirements. Oral warnings do not, however, satisfy the requirements of sec. 48.356(2), as constituted before or after the 1983 amendment.

IV.

HARMLESS ERROR
The department argues that the notice defects in the custody orders which preceded the March 6, 1984 dispositional orders were harmless, citing In Matter of E.B., 111 Wis. 2d 175, 185-86, 330 N.W.2d 584, 589-90 (1983). Presumably, the department intends its harmless error argument to extend generally to the trial court's failure to comply with sec. 48.356(2), Stats. The department claims that D.F.R. was made "well aware" of the potential for termination of her parental rights. The guardian ad litem argues that the oral warnings given D.F.R. at the March 6, 1984 and October 2, 1984 hearings together with counsel's review with her of the statutes satisfied her due process rights. We reject these contentions.

A.
First, E.B. is inapposite. E.B. is a separation-of-powers case confined to regulation of the practice and *498 procedure in the courts. It has nothing whatever to do with the power of the legislature to prescribe the grounds for involuntary termination of parental rights. In E.B. the trial court had failed to provide the jury with written instructions as required by secs. 805.13(4) and 972.10(5), Stats. The court of appeals held that the statutes were mandatory and vacated and remanded the circuit court's dispositional order. The supreme court reversed. The court concluded that, although the legislature could require that instructions be submitted to the jury in written form, the doctrine of separation of powers prohibited the legislature from mandating automatic reversal when a trial court failed to do so. The court concluded that it was the function of the judiciary to determine on a case-by-case basis whether the error of failing to submit written jury instructions to the jury required reversal. E.B., 111 Wis. 2d at 186, 330 N.W.2d at 590.
[6]
Section 48.415, Stats., does not infringe upon the power of the judiciary. The legislature is free, subject to constitutional limitations, to prescribe the grounds for involuntary termination of parental rights. It has chosen, for reasons which we consider apparent, to surround the CHIPS grounds for involuntary termination with procedural safeguards which will assure that a parent will be fully informed of the grounds for termination of parental rights which may be applicable.

B.
[7]
Second, a continuing need for protection and services can be a basis for involuntary termination of *499 parental rights only if the statutory warning required by sec. 48.356(2), Stats., is given each time an order places a child outside his or her home pursuant to secs. 48.345, 48.357, 48.363 or 48.365. We cannot apply the doctrine of harmless error to excuse the failure of the trial court to comply with the unequivocal, imperative command of sec. 48.356(2). Undoubtedly the warning requirement is imposed because of the legislature's concern for the due process rights of parents. Because the statute is mandatory, we may not substitute for the legislature's prescription alternative ways to satisfy the requirements of notice.
[8]
Because the department did not establish that D.F.R.'s children had been outside her home for a cumulative total period of one year or longer pursuant to dispositional orders containing the notice required by sec. 48.356(2), Stats., the trial court erred in terminating D.F.R.'s parental rights.
By the Court.Order reversed with directions to the trial court to dismiss the petitions.
NOTES
[1] The order also terminated the parental rights of the fathers of D.H. and D.F. Those terminations are not affected by our decision.